**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Michael Wayne SANDERSON,**
**et al., Defendants.**

**No. CR–96–0074–VRW.**

United States District Court,
N.D. California.

June 29, 2000.

Patrick Robbins, Office of the United States Attorney San Francisco Division, San Francisco, CA, for U.S.

Randy Daar, San Francisco, CA, for Defendants.

## SENTENCING ORDER

WALKER, District Judge.

This case is before the court for sentencing of defendant Michael Wayne Sanderson, who was convicted by a jury on December 17, 1997, on three counts: (1) conspiracy to export cocaine in violation of 21 USC §§ 963 and 953(a); (2) conspiracy to possess with intent to distribute cocaine in violation of 21 USC §§ 846 and 841(a)(1) and (3) aiding and abetting possession with intent to distribute cocaine in violation of 18 USC § 2 and 21 USC § 841(a)(1).

The relevant facts are provided in the presentence report and the parties' sentencing memoranda. Sanderson is an Australian citizen who has been in federal custody since his arrest on February 27, 1996. Acting on information received from Australian officials, federal customs agents detained codefendants Mark Duggan and Euripidis Mitrou as they were boarding a flight from San Francisco to Sydney on February 26, 1996. Agents searched Duggan and Mitrou and found a total of 7.9 kilograms of cocaine in packages strapped to their bodies. Further investigation led agents to Sanderson and codefendant Jaime Basalo, who were staying in a San Francisco hotel. When officers detained Basalo and Sanderson, they discovered in their possession luggage containing $97,700 in cash, latex gloves laced with cocaine residue, bandages, adhesive tape and documentary evidence of a smuggling operation linking Sanderson, Basalo, Duggan, Mitrou and another Australian, Gilbert John Ferguson.

Four defendants (Basalo, Sanderson, Duggan and Mitrou) eventually were charged in a superseding indictment.[1] Duggan and Mitrou pleaded guilty to all three counts and testified for the government at the trial of Sanderson and Basalo. According to their testimony, Duggan and Mitrou were recruited in Sydney to fly to the United States with cash and to return with cocaine. They testified that they carried about $22,500 and $80,000, respectively, to the United States in February 1996. Upon their arrival they met with Sanderson and Basalo, who accepted the cash and, immediately prior to the return flight to Sydney, assisted in strapping cocaine to the bodies of Duggan and Mitrou.

Duggan and Mitrou were each sentenced on February 10, 1998, and received, upon the court's granting of the government's motion for a downward departure for substantial assistance, a term of 24 months imprisonment and five years supervised release.[2] Basalo has not been sentenced; this order pertains only to defendant Sanderson.

I

The court must establish the appropriate sentence by reference to the United States Sentencing Commission guidelines. The base offense level under the guidelines is undisputed. Pursuant to USSG § 3D1.2(d), in cases in which the base offense level will be determined by the quantity of a substance involved, the counts of conviction are grouped together for sentencing purposes. For such grouped counts, the court must determine the of-

---

1. Sanderson was not initially charged along with Duggan, Mitrou and Basalo, but rather held as a material witness pursuant to 18 U.S.C. § 3144. Basalo, Duggan and Mitrou were indicted in March 1997. Sanderson was indicted in August 1997.

2. This sentence amounted to time served.

fense level corresponding to the aggregated quantity of the controlled substance involved. In this case, that quantity is 7.9 kilograms, resulting under USSG § 2D1.1(a)(3) in a base offense level of 32.

The parties also agree that Sanderson has no known prior convictions in the United States or Australia and therefore falls within criminal history category I. See USSG § 4A1.1.

Taking into account the specific offense characteristic adjustments of USSG § 2D1.1(b), the court finds—and the government agrees—that Sanderson is entitled to a downward adjustment of two points for meeting the criteria of the "safety valve" provision of 18 USC § 3553(f). See USSG § 2D1.1(b)(4). Sanderson does not have more than 1 criminal history point; he did not use violence or a firearm in connection with the offenses; the offenses did not result in death or serious injury; Sanderson was not an organizer or leader in the offense and has been debriefed by the government. The offense level therefore drops to 30 and, under 18 USC § 3555(f) and USSG § 5C1.2, the statutory mandatory minimum sentence does not apply.

Under the guidelines, the court may further adjust the offense level based on aspects of the defendant's conduct and other relevant circumstances. The parties raise several issues in this regard.

■ First, the government asserts that Sanderson should receive a two-level upward adjustment under USSG § 3C1.1. That section provides:

### Obstructing or Impeding the Administration of Justice

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1. The purported basis for adjustment under this section is Sanderson's alleged attempt to coordinate a false alibi with Basalo while the two were in custody. The government submits a copy of a note passed by Sanderson on November 14, 1997—the eve of trial—to a guard at the San Francisco County Jail for delivery to Basalo. See Gov Sent Mem, Exh 1. Application Note 4(a) to the guideline lists attempting unlawfully to influence a codefendant as conduct to which the obstruction adjustment applies. See USSG § 3C1.1, comment. (n.4). The note[3] is an obvious attempt by Sanderson to coordinate a story with his codefendant; indeed, defense counsel does not argue otherwise. See Def Sent Mem at 8 (describing passage of note as "attempted obstruction" and a "hopelessly flawed, spontaneous, and foolish act * * *."). Accordingly, a two-level upward adjustment of the offense level to 32 is warranted under guideline 3C1.1.

Sanderson asserts several bases for downward adjustments to the offense level. First, he argues that he is entitled to a reduction for a mitigating role in the offense pursuant to USSG § 3B1.2. That section allows a sentencing court to reduce the offense level by two, three or four points, depending on the level of participation by the defendant in the offenses of conviction. If the defendant was a "minimal" participant, a four-level adjustment is appropriate, USSG § 3B1.2(a); if a "minor" participant, a two-level adjustment is appropriate, USSG § 3B1.2(b); in cases

---

**3.** An excerpt: "We didn't go to the gym on 26th at night. We did go in the morning, but I don't think they know that. So maybe we can still say that. Or, when we got back to the hotel, I was with you when you took the money out and that's when I found the gloves and handled them."

falling in between, the court may decrease the offense level by three points. The guideline commentary suggests that a "minimal" participant is one who is "plainly among the least culpable of those involved in the conduct of a group." USSG § 3B1.2, comment. (n.1). A "minor" participant, meanwhile, is one "who is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2, comment. (n.3).

■ The court concludes that Sanderson is entitled to a four-level downward adjustment as a minimal participant. The government has argued that all four codefendants were part of a larger cocaine smuggling operation, and that of the four Basalo was the organizer of the present offense conduct, although (the government does not concede this) even he may be a minor participant in the overall scheme. Duggan and Mitrou were couriers of both money and drugs. Sanderson has been described as Basalo's assistant and has admitted to smuggling cash into this country, but there is no evidence that he ever smuggled cocaine. His conviction rests upon evidence that he helped Basalo strap cocaine packages to Duggan and Mitrou.

■ Minimal participant status must be based on the culpability of a defendant's conduct relative to other participants in the offense. *United States v. Petti,* 973 F.2d 1441, 1447 (9th Cir.1992). While the evidence at trial established that Basalo was the point man, Duggan and Mitrou were couriers, and that all three had been to the United States on previous occasions to engage in smuggling activity, this was Sanderson's first trip to this country and his role appears to have been that of Basalo's dogsbody. It would be speculative to infer a more involved role, as the government urges the court to do. Furthermore, although a defendant's "lack of knowledge or understanding of the scope or structure of the enterprise and of the activities of others is indicative of a role as a minimal participant," USSG § 3B1.2, comment. (n.3), such ignorance is not a prerequisite

to minimal participant status. *Petti,* 973 F.2d at 1447. Sanderson's general knowledge of the smuggling operation does not preclude the four-level adjustment the court deems appropriate. Based on the low level of culpability of Sanderson's conduct relative to his codefendants, the court concludes that the offense level should be reduced to 28 under USSG § 3B1.2(a).

■ Finally, Sanderson requests a downward adjustment under USSG § 3E1.1 for acceptance of responsibility. This section is plainly inapplicable here, however, in a case in which Sanderson put the government to its burden of proof at trial by denying the essential factual elements and only after conviction admitted guilt. See USSG § 3E1.1, comment. (n.2); *United States v. Hicks,* 217 F.3d 1038, 2000 WL 744077 (9th Cir. June 12, 2000).

Based on the foregoing, the court concludes that the total offense level is 28 with a criminal history category of I. According to the sentencing table provided in chapter five, part A, of the sentencing guidelines, the applicable sentencing range is 78–97 months imprisonment.

## II

■ The remaining issue is whether grounds exist, as Sanderson argues they do, for a departure from this guideline range. The sentencing court must follow the applicable guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines * * *." 18 USC § 3553(b); see also USSG § 5K2.0. As the Supreme Court has explained, this provision preserves the district court's sentencing discretion and "acknowledg[es] the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances." *Koon v. United States,* 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

Departure decisions are by their very nature case-specific. In *Koon*, the Court described the contours of the sentencing court's discretion thus:

Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.

*Id.* at 98, 116 S.Ct. 2035. The Court adopted a framework of questions to guide the district court's departure analysis. The first, naturally, is:

(1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?

*Id.* at 95, 116 S.Ct. 2035 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993)).

Sanderson points to the existence of an employee incentive program within the United States Customs Service and the government's failure to disclose prior to trial that several of the Customs agents involved in Sanderson's investigation and prosecution, including most of those who testified against him, received special bonuses for their work. This court has described the Customs Service incentive program and its troubling implications in a prior case. See *Buritica v. United States*, 8 F Supp 2d 1188, 1193–95 (N.D.Cal.1998). For present purposes, it will suffice to note that of the 12 customs officials who testified for the government at Sanderson's trial, eight had received special compensation under the incentive program for their drug interdiction efforts, including two (Textile Analyst Diane Irvine and Supervisory Special Agent Robert Stiriti) who were rewarded in part for their performance in the Sanderson case itself. It is undisputed that this information was not provided to defense counsel until after Sanderson's trial and conviction.

There can be no doubt that the above renders this case unusual. The court is therefore satisfied that it has the *authority* to sentence outside the guideline range. The more difficult issue is whether the unusual aspects of the case support a downward departure. Here the guidelines are of little help. That is, the Commission has neither forbidden, encouraged nor discouraged departures based on governmental misconduct or possible prejudice to defendants arising therefrom. See *United States v. Coleman*, 188 F.3d 354, 359 (6th Cir.1999) ("Improper investigative techniques, used as a basis for departing downward, are not factors considered by the Guidelines.").

Much attention has been given in the briefs to *United States v. Lopez*, 106 F.3d 309 (9th Cir.1997). In *Lopez*, the Ninth Circuit held that a district court did not abuse its discretion in departing downward three levels due to prejudice to the defendant arising from a confluence of ethical violations by the prosecutors and defense attorneys involved. 106 F.3d at 311. Lopez was represented by an attorney who refused to plea bargain. Interested in pursuing negotiations with the government, but fearful of alienating his chosen trial counsel, Lopez arranged through his codefendant's counsel to engage in a series of plea discussions with the government. These discussions were fruitless; they resulted only in the withdrawal of Lopez's counsel upon his discovery of the negotiations. Upon a motion by substitute counsel, the district court dismissed the indictment based on prosecutorial misconduct. *United States v. Lopez*, 765 F.Supp. 1433, 1456 (N.D.Cal.1991). The Ninth Circuit reversed and remanded for trial, holding that although the district court correctly found a violation of the prosecutor's ethical duties, dismissal was too grave a sanction. *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir.1993).

Lopez was tried and convicted, and on cross-appeal of the sentencing the govern-

ment argued that the district court erred in departing downward based on the circumstances which led to its original decision to dismiss the indictment. The Ninth Circuit held that Lopez had, in essence, been deprived of the opportunity for full and fair plea negotiations, and therefore affirmed the district court's departure "due to prejudice Lopez suffered as a result of the government's misconduct." *Lopez*, 106 F.3d at 311.

For present purposes, the court draws the following lessons from *Lopez*. First, the case affirms the district court's broad latitude to depart from the guideline range in cases presenting unusual circumstances, even when the unusual aspects of the case have nothing to do with the offense conduct. Second, it makes clear that governmental conduct unrelated to the defendant's factual guilt or innocence is a relevant sentencing consideration. Finally, *Lopez* suggests that a departure determination should focus on prejudice to the defendant arising from such conduct.

Bearing these lessons in mind, the court finds that a downward departure is appropriate in this case.

The defense was deprived, during key periods of the proceedings, of valuable information, i.e., that government witnesses participated in the Customs Service incentive program. Such information would have been another arrow in defendant's quiver during plea negotiations and for purposes of impeachment at trial. The government's argument that disclosure simply could not have effected the outcome of this case is seriously undermined by common sense and the evidence submitted by the defense. See Decl of A.J. Kutchins, Supp Exh in Support of Def Mtn for New Trial or Downward Dep (describing apparent influence of disclosure of incentive program on government's willingness to negotiate favorable settlement of unrelated

drug case). This is not to say that with disclosure the outcome of this case would have been different or even that present circumstances demand a new trial.[4] But the court finds that defendant's position was subverted to an extent that supports a sentencing departure.

As noted above, the guideline range corresponding to an adjusted total offense level of 28 with a criminal history category of I is 78–97 months imprisonment. The court concludes that a four-level departure is appropriate, reducing the applicable offense level to 24 and the sentencing range to 51–63 months. With credit for time served, a sentence at the low end of this guideline range will entitle Sanderson to immediate release. In determining the magnitude of the appropriate departure, the court has found relevant that Duggan and Mitrou each received 10–level departures to enable a sentence amounting to time served.

In exercising its discretion under the guidelines, the court has also taken into account the defendant's demeanor at sentencing, his apparent remorse and his plans to return to Australia upon the expiration of his sentence. It is the court's firm belief that in light of the evidence adduced during a lengthy trial and all the circumstances of this case, the sentence herein imposed is consistent with the policies of the sentencing guidelines, is more than sufficient to satisfy the general purposes of punishment and deterrence and is otherwise just.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Michael Wayne Sanderson, is hereby committed to the Bureau of Prisons for a term of 51 months on each count to be served concurrently. Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years on each count, also to

---

**4.** Indeed, the court concludes that defendant's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 must be denied on the basis that defendant has not shown a reasonable probability that with disclosure the result of the proceeding would have been different. *United States v. Walgren*, 885 F.2d 1417, 1427–28 (9th Cir.1989).

run concurrently. The court adopts the recommended terms and conditions of supervised release as set forth in the presentence report. In light of Sanderson's plans to leave the country, however, Sanderson's duty to report to the probation office shall arise only upon his return to the United States within the five-year period of supervised release. Should Sanderson, after departing this country, return to the United States at any time during the supervised release term, he shall within 72 hours of his return report to the United States Probation Office in the district in which he enters the country and be subject to the standard conditions of supervised release. The court adopts the additional factual findings of the presentence report, including that of Sanderson's inability to pay a fine and the corresponding recommendation that no fine be imposed.

It is further ordered that Sanderson shall pay to the United States a special assessment of $50 for each conviction, for a total of $150, due immediately.

The clerk shall prepare a judgment in accordance with this order.

IT IS SO ORDERED.