UNITED STATES of America,
Plaintiff,

v.

Jaime Aberlado BASALO, Defendant.

No. CR–96–0074–VRW.

United States District Court,
N.D. California.

Aug. 29, 2000.

Patrick Robbins, Office of the United States Attorney San Francisco Division, San Francisco, CA, for U.S.

Gail Shifman, Attorney at Law, San Francisco, CA, for Defendant.

### SENTENCING ORDER

WALKER, District Judge.

Jaime Aberlado Basalo was convicted by a jury on December 17, 1997, on three counts: (1) conspiracy to export cocaine in violation of 21 USC §§ 963 and 953(a); (2) conspiracy to possess with intent to distribute cocaine in violation of 21 USC §§ 846 and 841(a)(1) and (3) aiding and abetting possession with intent to distribute cocaine in violation of 18 USC § 2 and 21 USC § 841(a)(1). This order imposes sentence for these offenses.

I

The relevant factual background is provided in the presentence report and the parties' sentencing memoranda. Basalo is a native of Uruguay who has resided in Australia for most of his life and has become an Australian citizen. He has been in federal custody since his arrest on February 27, 1996.

Acting on information received from Australian officials, federal customs agents detained codefendants Mark Duggan and Euripidis Mitrou as they were boarding a flight from San Francisco to Sydney on February 26, 1996. Agents searched Duggan and Mitrou and found a total of 7.9

kilograms of cocaine in packages strapped to their bodies. Further investigation led agents to Basalo and codefendant Michael Wayne Sanderson, who were staying in a San Francisco hotel. When officers detained Basalo and Sanderson, they discovered in their possession luggage containing $97,700 in cash, latex gloves laced with cocaine residue, bandages, adhesive tape and documentary evidence of a smuggling operation linking Sanderson, Basalo, Duggan, Mitrou and another Australian, Gilbert John Ferguson.

Four defendants (Basalo, Sanderson, Duggan and Mitrou) were charged in a superseding indictment.[1] Duggan and Mitrou pleaded guilty to all three counts and testified for the government at the trial of Sanderson and Basalo. According to their testimony, Duggan and Mitrou were recruited in Sydney to fly to the United States with cash and to return with cocaine. They testified that they carried about $22,500 and $80,000, respectively, to the United States in February 1996. Upon their arrival they met with Sanderson and Basalo, who accepted the cash and, immediately prior to the return flight to Sydney, assisted in strapping cocaine to the bodies of Duggan and Mitrou.

At trial, Duggan and Mitrou also testified about a similar trip to the United States in December 1995, during which they and a third courier, Mary Barnes, met Basalo in San Francisco. According to their testimony, on December 12, 1995, the day of their return flight to Sydney, Basalo assisted in strapping approximately four kilograms of cocaine each to Duggan, Mitrou and Barnes (for a total of 12 kilograms) which was successfully smuggled into Australia.

The court sentenced Duggan and Mitrou on February 10, 1998, and imposed, after granting the government's motion for a downward departure for substantial assistance, a term of 24 months imprisonment and five years supervised release. These sentences amounted to time served. By order of June 29, 2000, the court sentenced Sanderson to 51 months imprisonment on each of three counts to run concurrently, see *United States v. Sanderson*, 110 F.Supp.2d 1221 (N.D.Cal. 2000); the term amounted to time served and Sanderson has since been released and returned to Australia.

On August 1, 2000, the court heard argument on Basalo's sentencing, gave the defendant his right of alocution and took the matter under submission.

## II

Pursuant to 18 USC § 3553(a)(4), the court must establish a sentencing range by reference to the United States Sentencing Commission guidelines.

### A

Under USSG § 3D1.2(d), in cases in which the base offense level will be determined by the quantity of a substance involved, the counts of conviction are grouped together for sentencing purposes. For such grouped counts, the court must determine the offense level under USSG § 2D1.1(a)(3) by reference to the aggregated quantity of: (1) the controlled substance involved in the charged offense and (2) any controlled substances relating to relevant conduct within the meaning of USSG § 1B1.3(2).

The court finds that the government has established, by a preponderance of the evidence, that the quantity of cocaine upon which the base offense level must be determined is approximately 20 kilograms, comprising 7.9 kilograms from the February 1996 smuggling attempt and approximately 12 kilograms from the December 1995 effort. Basalo has admitted in a post-trial debriefing that these quantities are accurate. The base offense level, therefore,

---

**1.** Sanderson was not initially charged along with Duggan, Mitrou and Basalo, but rather held as a material witness pursuant to 18 USC § 3144. Basalo, Duggan and Mitrou were indicted in March 1997. Sanderson was indicted in August 1997.

pursuant to the drug quantity table of USSG § 2D1.1(c), is 34.

The parties agree that Basalo has no known prior convictions in the United States or Australia and therefore falls within criminal history category I. See USSG § 4A1.1.

### B

The so-called "safety valve" provision of 18 USC § 3553(f) is relevant to Basalo's sentence in three important respects. First, if Basalo meets the safety valve criteria, the statutory minimum sentence of ten years, see 21 USC § 841(b)(1)(A), does not apply. 18 USC § 3553(f). Second, according to the specific offense characteristic adjustments of USSG § 2D1.1(b), Basalo would be entitled to a two-point downward adjustment to the base offense level. See USSG § 2D1.1(b)(4). Finally, one safety valve factor—whether the defendant is an organizer, leader, manager or supervisor in the offense—mirrors the inquiry for a sentence adjustment under the guidelines for aggravating role. See USSG § 3B1.1. The government seeks a four-level upward adjustment to the offense level pursuant to this provision.

There are five safety valve factors, and no dispute on four of them: Basalo does not have more than one criminal history point; he did not use violence or a firearm in connection with the offenses; the offenses did not result in death or serious injury; Basalo has been debriefed by the government.

█ A fifth factor, however, concerning Basalo's role in the conspiracy, is a key point of contention. The government argues that Basalo was an "organizer or leader of a criminal activity that involved five or more participants" and therefore ineligible for safety valve protection and subject to a four-level upward adjustment. The government bases this argument on evidence at trial that Basalo relayed instructions from superiors in Australia to other conspiracy participants in San Francisco. According to the government, Basalo "clearly fell within the middle of the conspiracy's hierarchy", Gov Sent Mem at 3, and insofar as he directed the activity of other conspirators must be considered an organizer or leader.

Basalo admits that his role was "important, essential and different from some of the other defendants to appear before the Court," Def Reply Mem at 3, but maintains that his activity does not make him a organizer, leader, manager or supervisor of the conspiracy. At oral argument, counsel articulated Basalo's position this way: "Simply because it is his job to call back to Australia every single day to get the instructions for the group does not make him the supervisor or the leader. It makes him the AT & T operator here." Trans of Aug 1, 2000, hearing at 12–13.

The sentencing guidelines direct the court to consider the following factors in determining whether a defendant was an organizer or leader: the exercise of decisionmaking authority; the nature of the offense and the defendant's participation in the offense; the recruitment of accomplices; the claimed right to a larger share of the fruits of the crime and the degree of control and authority exercised over others. USSG § 3B1.1, comment. (n.4); *United States v. Ponce*, 51 F.3d 820, 827 (9th Cir.1995). Upon consideration of these factors in light of the evidence, the court concludes that Basalo was not an organizer, leader, manager or supervisor within the meaning of USSG § 3B1.1 and 18 USC § 3553(f)(4).

Basalo exercised no decisionmaking authority; to the contrary, the evidence indicates that his role was to take orders, not make them. That he relayed those orders to others does not make Basalo a decisionmaker. Nor has the government presented evidence that Basalo recruited accomplices or claimed a greater share of profits from the smuggling operation. The evidence indicates that conspirators were recruited in Australia by others. Basalo's

statement that he did not receive a larger share of profits is unrebutted. While Basalo did coordinate the activities of other conspirators to the extent necessary to carry out specific instructions from Australia, the evidence does not support a conclusion that he exercised any degree of authority or control. See *United States v. Lopez–Sandoval*, 146 F.3d 712, 716–718 (9th Cir.1998) (defendant who acted as translator and relayed information about time and place of drug transactions and perhaps price of drugs not organizer, leader, manager or supervisor).

In sentencing Sanderson, the court characterized Basalo as a "point man." This he was, in the sense of one acting as a conduit of information from superiors. But he possessed no more authority in the operation of the conspiracy than the other defendants who have been before the court.

The government proceeds on the theory that, among those who came to the United States to do the legwork of this smuggling operation, there must have been at least one organizer or leader. But this does not comport with the evidence or the court's understanding of the workings of this and other drug smuggling operations.

■ Just as a district court, "informed by its vantage point and day-to-day experience in criminal sentencing," has an "institutional advantage" in assessing the grounds for a departure under the guidelines, *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), so too should a district court draw upon such experience in making role in the offense adjustments. As the undersigned has observed in more than 10 years of trying drug trafficking cases, the leaders of drug rings follow the self-serving practice of staying off the front lines. It is therefore not surprising that those ensnared in this case were all pawns. Basalo may have been the first among pawns, but in this sorry game he was no knight, bishop or rook, much less a king.

While Basalo's conduct precludes a finding that he played a *mitigating* role in the offense (as the court found with respect to Sanderson), it does not, for the reasons stated, support an adjustment for an aggravating role under USSG § 3B1.1. The court also concludes that the safety valve criteria are met in this case. The offense level therefore drops to 32 and, under 18 USC § 3555(f) and USSG § 5C1.2, the statutory mandatory minimum sentence does not apply.

### C

■ The government asserts that Basalo should receive a two-level upward adjustment under USSG § 3C1.1. That section provides:

#### Obstructing or Impeding the Administration of Justice

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1. The purported basis for adjustment under this section is Basalo's alleged perjury at trial. Perjury is an enumerated example of obstruction to which the guideline applies. USSG § 3C1.1, comment., (n.4(b)). Basalo concedes that he lied on the stand, but argues that his conduct was not willful because his former attorney instructed him to lie. Even if true, advice of counsel does not excuse Basalo's conduct. Basalo possessed the intent to provide false testimony and did so on a material matter, which is what the law forbids. *United States v. Robinson*, 63 F.3d 889, 892 (9th Cir.1995). A two-level upward adjustment therefore increases the offense level to 34.

Based on the foregoing, the court concludes that the total offense level is 34 with a criminal history category of I. According to the sentencing table provided in chapter five, part A, of the sentencing guidelines, the applicable sentencing range is 151–188 months imprisonment.

### III

■ The remaining issue is whether grounds exist, as Basalo argues they do, for a departure from this guideline range. The sentencing court must follow the applicable guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines * * *." 18 USC § 3553(b); see also USSG § 5K2.0. As the Supreme Court has explained, this provision preserves the district court's sentencing discretion and "acknowledg[es] the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances." *Koon v. United States,* 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

■ Departure decisions are by their very nature case-specific. In *Koon,* the Court described the contours of the sentencing court's discretion as follows:

Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.

*Id.* at 98, 116 S.Ct. 2035. A departure from the guideline range is, at bottom, an exercise of the trial court's traditional latitude in sentencing in the interest of fairness. Promulgation of the sentencing guidelines did not make federal sentencing an entirely mechanical process (although it

went a long way in that direction). As the Ninth Circuit has noted, however, departures are by definition reserved for the most unusual cases and should be "highly infrequent." *United States v. Banuelos–Rodriguez,* 215 F.3d 969, 974 (9th Cir. 2000).

Basalo posits a number of possible bases for departure, two of which have considerable force.[2] First, Basalo maintains that he was prejudiced by the government's failure to disclose information regarding the participation of government witnesses in an incentive program at the United States Customs Service. The court granted a four-level departure on this basis to codefendant Sanderson. *United States v. Sanderson,* 110 F.Supp.2d 1221 (N.D.Cal. 2000). Recognizing that the court's reasoning applies to Basalo as well, the government asks the court to reconsider its ruling or, in the alternative, conduct an evidentiary hearing concerning the actual effect, if any, of the nondisclosure on plea negotiations.

Second, Basalo argues that his former counsel conducted his defense in such an unethical and incompetent manner as to subject him to enhanced penalties. Counsel allegedly advised Basalo not to cooperate with the government, to submit false declarations, to testify and to perjure himself, all in reckless disregard of Basalo's interests. The government argues that the law of this and other circuits prohibits a downward departure on the basis of ineffective assistance of counsel.

In its sentencing order in *Sanderson,* the court included the following discussion of *United States v. Lopez,* 106 F.3d 309 (9th Cir.1997):

In *Lopez,* the Ninth Circuit held that a district court did not abuse its discretion in departing downward three levels due to prejudice to the defendant arising from a confluence of ethical violations by the prosecutors and defense attorneys involved. 106 F.3d at 311. Lopez was

2. To the extent not addressed in this section, defendant's departure arguments are rejected.

represented by an attorney who refused to plea bargain. Interested in pursuing negotiations with the government, but fearful of alienating his chosen trial counsel, Lopez arranged through his co-defendant's counsel to engage in a series of plea discussions with the government. These discussions were fruitless; they resulted only in the withdrawal of Lopez's counsel upon his discovery of the negotiations. Upon a motion by substitute counsel, the district court dismissed the indictment based on prosecutorial misconduct. *United States v. Lopez,* 765 F.Supp. 1433, 1456 (N.D.Cal.1991). The Ninth Circuit reversed and remanded for trial, holding that although the district court correctly found a violation of the prosecutor's ethical duties, dismissal was too grave a sanction. *United States v. Lopez,* 4 F.3d 1455, 1464 (9th Cir. 1993).

Lopez was tried and convicted, and on cross-appeal of the sentencing the government argued that the district court erred in departing downward based on the circumstances which led to its original decision to dismiss the indictment. The Ninth Circuit held that Lopez had, in essence, been deprived of the opportunity for full and fair plea negotiations, and therefore affirmed the district court's departure "due to prejudice Lopez suffered as a result of the government's misconduct." *Lopez,* 106 F.3d at 311.

For present purposes, the court draws the following lessons from *Lopez.* First, the case affirms the district court's broad latitude to depart from the guideline range in cases presenting unusual circumstances, even when the unusual aspects of the case have nothing to do with the offense conduct. Second, it makes clear that governmental conduct unrelated to the defendant's factual guilt or innocence is a relevant sentencing consideration. Finally, *Lopez* suggests that a departure determination should focus on prejudice to the defendant arising from such conduct.

*United States v. Sanderson,* 110 F.Supp.2d 1221 (N.D.Cal. 2000).

Although the court did not so state in *Sanderson,* these "lessons from *Lopez*" are in tension with other guideline departure cases in this circuit. In particular, the government cites *United States v. Banuelos–Rodriguez,* 215 F.3d 969 (9th Cir.2000) (a decision filed after this court's *Sanderson* order), and *United States v. Crippen,* 961 F.2d 882 (9th Cir.1992), both of which, in more detailed discussions than that of *Lopez,* support the government's argument that a basis for departure must reflect upon the seriousness of the crime committed or the defendant's level of culpability.

In *Banuelos–Rodriguez,* the court stated that "a district court may not grant a downward departure from an otherwise applicable Guideline sentencing range on the ground that, had the defendant been prosecuted in another federal district, the defendant may have benefitted from the charging or plea-bargaining policies of the United States Attorney in that district." 215 F.3d at 978. Although the court provided several bases for its decision, it noted that standard prosecutorial policies in separate judicial districts could not be considered a "mitigating circumstance" for departure purposes because such policies say nothing about the severity of a defendant's conduct or his criminal or personal history. *Id.* at 973.

In *Crippen,* the court's requirement that departure analysis focus on the conduct and culpability of the *defendant* was starkly apparent. The court held that ineffective assistance of counsel in a previous state court proceeding, while it may have prejudiced defendant in causing him to reject an attractive plea offer, did not relate to any penological purpose or legitimate sentencing concern expressed in the Sentencing Reform Act and, therefore, did not constitute a permissible basis for departure. 961 F.2d at 885. The court held that ineffective assistance of counsel "d[id]

not make his federal crime any less serious" or "in any way affect * * * defendant's culpability for the crime committed." *Id.*[3]

*Lopez*, meanwhile, unquestionably sanctions a downward departure unrelated to the severity of the crime or defendant's culpability. As noted above, the court held that the prosecutor's unethical conduct had deprived defendant of the opportunity for "full and fair plea negotiations" and that the district court did not abuse its discretion by departing on the basis of prejudice to the defendant. 106 F.3d at 311. Such prejudice was unrelated to the offense conduct or defendant's personal or criminal history, but rather concerned defendant's process rights and the fairness of the criminal justice system.

Under *Lopez*, the bases Basalo advances for departure—prejudice stemming from counsel's incompetence and nondisclosure of potential impeachment evidence—are permissible grounds for departure. Under the logic of *Banuelos–Rodriguez* and *Crippen*, arguably, they are not. Recognizing this difficultly, the court nevertheless concludes that, under the principles of *Koon*, a departure on both grounds is appropriate on the particular facts of this case.

In *Koon*, the Supreme Court emphasized that any factor not categorically proscribed as a departure factor by the Sentencing Commission might, in the particular circumstances of a case, take the case out of the heartland of the applicable guideline. 518 U.S. at 109, 116 S.Ct. 2035. In that case, the Court found that the district court did not abuse its discretion in basing a departure on two factors decidedly unrelated to the the severity of the offense or culpability of the defendants, i.e., defendants' susceptibility to abuse in prison and the burden of successive state and federal prosecutions. *Id.*

at 111–12. Granting a departure on the likelihood of recidivism, by contrast, was an abuse of discretion because the Sentencing Commission had considered this factor in adopting criminal history categories. *Id.* at 111.

In *Sanderson*, the court explained why the failure of the government to disclose the participation of witnesses in the Customs Service incentive program takes this case out of the heartland. The court's determination was not, as the government's proposed evidentiary hearing suggests, based on a factual determination that Sanderson had been deprived of an attractive plea offer. Rather, the court concluded that Sanderson's plea bargaining position had been subverted to an important extent, and that the dynamic of the case was thereby affected enough to warrant departure. The same holds true for Basalo. The ramifications of the deprivation of an important plea bargaining chip cannot be determined in an ex post hearing. For the reasons stated in *Sanderson*, the court finds it appropriate to remedy this unusual aspect of the case at sentencing.

Similarly, the court deems it appropriate to depart downward based on the prejudice suffered by defendant at the hands of his trial counsel. Counsel's flagrant disregard of Basalo's interests are the single greatest factor to explain the disparity in the government's recommended sentences for Duggan and Mitrou (24 months) and Basalo (292 months) for identical convictions. Counsel's misdeeds are well-documented in the record. She advised Basalo not to cooperate with the government and to proceed to trial against near-insurmountable odds simply to provide a forum for her own crusade against law enforcement. She counseled him to submit a false

---

**3.** The continuing validity of *Crippen*, as a pre-*Koon* categorical exclusion of a permissible basis for departure, is doubtful. See *Koon v. United States*, 518 U.S. 81, 106–07, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("Congress did not grant federal courts authority to decide

what sorts of sentencing considerations are inappropriate in every circumstance. * * * Thus, for the courts to conclude a factor must not be considered under any circumstances would be to transgress the policy-making authority vested in the Commission.").

declaration, to testify and lie on the stand. Basalo, of course, followed these instructions, but there is no doubt that he was manipulated. To sentence Basalo within the guideline range would be, in a very real sense, to impose severe punishment upon him for counsel's malfeasance and would, in this court's judgment, be a gross miscarriage of justice.

Under the guidelines and our system of plea bargaining, a defendant's sentence is determined to as great a degree (or greater) by postoffense circumstances as by conduct constituting the elements of the offense. The actions of the defendant and others during a criminal investigation, pretrial negotiations and plea bargaining have drastic effects on the defendant's ultimate sentence. The guidelines are replete with sentencing factors which do not bear on the seriousness of the offense charged or the culpability of the defendant in committing that offense, including the mother of all departures, substantial assistance to authorities, USSG § 5K1.1. *Koon* permits the consideration of such factors for departure on a case by case basis. In this case, Basalo was prejudiced by two unusual postoffense circumstances—failure of the government to disclose potential impeachment material and gross misconduct by trial counsel. These factors warrant a departure from the guideline range.

As noted above, the total offense level is 34. The court has determined that an eight-level downward departure is appropriate. Such a departure results in a sentence in keeping with that of codefendant Sanderson, with an additional two points for the uncharged relevant conduct of December 1995 in which Sanderson was not involved. Under the Drug Quantity Table of USSG § 2D1.1(c), the additional 12 kilograms of cocaine relating to the December 1995 smuggle enhances the base offense level by two points.

█ The government cites *Banuelos–Rodriguez* in support of its argument that consideration of codefendant sentences is inappropriate in the departure context. But that case does not stand for such a broad proposition. After reviewing relevant precedent, the Ninth Circuit stated: "[E]qualization of sentences is an improper ground for departure if the court is attempting to equalize the sentences of codefendants who are convicted of *committing different offenses*, even if their behavior was similar." 215 F.3d at 978 (emphasis added). First, the court notes that disparate sentences among codefendants is not a *ground* for departure in this case. Rather, the court departs for the reasons identified above, and considers Sanderson's sentence only in determining the magnitude of the appropriate departure. Of course, Sanderson also received a departure, and the court set that departure to result in a sentence amounting to time served and to reflect appropriate additional penalties relative to codefendants Duggan and Mitrou. But *Banuelos–Rodriguez* does not prohibit such considerations, because all four codefendants in this case were convicted of *the same offenses*. Postoffense conduct (cooperation, plea bargaining, exercising trial rights, etc.) is all that distinguishes the cases of Duggan and Mitrou, on the one hand, and Sanderson and Basalo, on the other. The court is therefore well within its discretion in considering the sentences of all codefendants in determining the appropriate departure in this case.

In exercising its discretion, the court has also taken into account the defendant's demeanor at sentencing, his apparent remorse and his plans to return to Australia upon the expiration of his sentence. It is the court's firm belief that in light of the evidence adduced during a lengthy trial and all the circumstances of this case, the sentence herein imposed is consistent with the policies of the sentencing guidelines, is more than sufficient to satisfy the general purposes of punishment and deterrence and is otherwise just.

With a revised total offense level of 26, the guideline sentencing range is 63–78 months. The court concludes that a sen-

tence at the low end of this range is appropriate.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Jaime Aberlado Basalo, is hereby committed to the Bureau of Prisons for a term of 63 months on each count to be served concurrently. Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years on each count, also to run concurrently. The court adopts the recommended terms and conditions of supervised release as set forth in the presentence report. In light of Basalo's plans to leave the country, however, his duty to report to the probation office shall arise only upon his return to the United States within the five-year period of supervised release. Should Basalo, after departing this country, return to the United States at any time during the supervised release term, he shall within 72 hours of his return report to the United States Probation Office in the district in which he enters the country and be subject to the standard conditions of supervised release. The court adopts the additional factual findings of the presentence report, including that of Basalo's inability to pay a fine and the corresponding recommendation that no fine be imposed.

It is further ordered that Basalo shall pay to the United States a special assessment of $50 for each conviction, for a total of $150, due immediately.

The clerk shall prepare a judgment in accordance with this order.

IT IS SO ORDERED.