**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jaime Aberlado BASALO,
Defendant–Appellee.**

No. 00–10457.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2001

Filed Aug. 2, 2001

Patrick D. Robbins, Assistant U.S. Attorney, Office of the U.S. Attorney, San Francisco, California, for the plaintiff-appellant.

Gail Shifman, Esq., San Francisco, California, for the defendant-appellee.

Before: SCHROEDER, CHIEF JUDGE, WALLACE, and TALLMAN, Circuit Judges.

WALLACE, Circuit Judge:

The government appeals from Basalo's sentence, requesting that it be reversed due to a downward departure of eight levels from the applicable Sentencing Guidelines range. The district court determined that such departure was warranted because "Basalo was prejudiced by two unusual postoffense circumstances-failure of the government to disclose potential impeachment material and gross misconduct by trial counsel." *United States v. Basalo,* 109 F.Supp.2d 1219, 1227 (N.D.Cal.2000). The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3742(b). We vacate the sentence and remand for resentencing.

## I

Basalo and co-defendant Sanderson were indicted for their roles in smuggling cocaine from San Francisco to Sydney, Australia. Two additional co-defendants, Duggan and Mitrou, agreed to testify for the government at trial and pled guilty to conspiracy to export cocaine and to possess and distribute cocaine.

During a pre-trial handwriting exemplar session, two Customs agents improperly addressed Basalo and made statements critical of Basalo's defense counsel. The district court denied a motion to dismiss for government misconduct, but it did allow defense counsel to cross-examine the agents about this incident at trial. The district court also agreed to instruct the jury that the agents had acted improperly. At trial, Basalo's counsel asserted through questions on cross-examination that the agents had disparaged her based upon her religion. Because this accusation had not been made prior to trial, the government asked that defense counsel be required to demonstrate a good faith basis for the assertion. The district court ordered counsel to file a declaration under oath; both defense counsel and Basalo filed statements asserting that the agents had made anti-Semitic remarks at the handwriting exemplar session.

Basalo testified in his own defense at trial. He denied that he had ever been involved in cocaine trafficking, and he explained that he had come to the United States for a vacation and to do Christmas shopping. Basalo also asserted that certain incriminating notes were not written by him and denied owning other incriminating material found in his luggage when he was arrested. Basalo and Sanderson were convicted on all three counts in the indictment: conspiracy to export cocaine (21 U.S.C. § 963), conspiracy to possess and distribute cocaine (21 U.S.C. § 846), and the possession and distribution of cocaine/aiding and abetting (21 U.S.C. § 841(a)(1); 18 U.S.C. § 2).

Prior to sentencing, Sanderson filed a motion for a new trial or for a sentencing departure in which he alleged that he should have received pretrial discovery regarding a U.S. Customs Service incentive program (Customs Program). Under the Customs Program, agents may receive small cash awards or days off work for outstanding job performance. The awards are not tied to a schedule for specific accomplishments such as number of arrests, seizures, indictments or convictions. Eight of the government witnesses who testified at the trial had previously received awards under the Customs Program. These awards consisted of monetary or gift certificate awards ranging from $166.60 to $1000 and time-off awards from one to five days. Some of the witnesses had received more than one such award. Only one of the witnesses received an award specifically linked to the instant case: the government's textiles expert received a $250 "Dinner–For–Two" gift cer-

tificate "for the extra work on her part in preparation for testifying at the trial [of Basalo and Sanderson]."

The district court denied Sanderson's motion for a new trial, holding that Sanderson had failed to establish that the information about the Customs Program was material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *United States v. Sanderson,* 110 F.Supp.2d 1221, 1226 n. 4 (N.D.Cal.2000). The district judge did, however, grant a four-level sentencing departure because in his view "[t]he defense was deprived, during key periods of the proceedings, of valuable information, i.e., that government witnesses participated in the Customs Service incentive program." *Id.* at 1226. The district court reasoned that "[s]uch information would have been another arrow in defendant's quiver during plea negotiations and for purposes of impeachment at trial." *Id.*

Basalo obtained new counsel after trial and belatedly sought to cooperate with the government. During a debriefing with government agents, Basalo alleged that his trial counsel advised him to lie in his defense at trial and that she supplied him with a false affidavit, which he signed, in connection with the handwriting exemplar incident. Basalo then joined in Sanderson's motion for a departure on the basis of the Customs Program and asserted several other grounds as well, including ineffective assistance of counsel. In light of the district court's ruling as to Sanderson, the government requested an evidentiary hearing for the purpose of addressing whether the Customs Program information would have had an effect on plea negotiations with Basalo. At the sentencing hearing, the government also requested that an evidentiary hearing be held regarding Basalo's allegations concerning his counsel.

The district court granted a combined eight-level downward departure for the withholding of information about the Customs Program and for ineffective assistance of defense counsel without holding an evidentiary hearing on either basis for departure. *Basalo,* 109 F.Supp.2d at 1227. The district court explained as to its departure based on the Customs Program information that "[Basalo's] plea bargaining position had been subverted to an important extent, and that the dynamic of the case was thereby affected enough to warrant departure.... The ramifications of the deprivation of an important plea bargaining chip cannot be determined in an ex post hearing." *Id.* at 1226. The district court wrote of its decision to depart downward for ineffective assistance of counsel that, "Counsel's flagrant disregard of Basalo's interests are the single greatest factor to explain the disparity in the government's recommended sentences for Duggan and Mitrou (24 months) and Basalo (292 months) for identical convictions." *Id.*

## II

We review the district court's decision to depart from the Guidelines sentencing range for an abuse of discretion. *United States v. Banuelos–Rodriguez,* 215 F.3d 969, 972 (9th Cir.2000) (en banc). "[A]n abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (internal citation omitted). Because the factors at issue in this case are unmentioned in the Guidelines, the district court was required to consider the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole" in deciding whether these factors were sufficient to take the case out of the Guideline's heartland. *Id.* at 96, 116 S.Ct. 2035 (internal quotation omitted). The Su-

preme Court has cautioned that, "[t]he court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.' " *Id.*

### A.

We have held that a district court may depart downward for governmental misconduct when that misconduct causes demonstrable prejudice to the defendant's position at sentencing. *United States v. Lopez*, 106 F.3d 309, 311 (9th Cir.1997). We subsequently held en banc in *Banuelos–Rodriguez*, however, that prosecutorial policy choices are not "mitigating circumstances" because they do not serve to "lessen[ ] the severity of [a] Defendant's conduct or make[ ] his criminal or personal history more sympathetic." 215 F.3d at 973.

■ Here, the conduct complained of is the withholding of information about the Customs Program. Such a decision is a prosecutorial policy decision which may not be used as the basis for a departure under *Banuelos–Rodriguez* because it did not serve to "lessen[ ] the severity of [Basalo's] conduct or make[ ] his criminal or personal history more sympathetic." *Id.* Of course, there may be an issue requiring district court consideration if the government were required to provide this information under *Brady* and failed to do so. But there are two problems with the use of a *Brady* violation to depart downward.

■ First, the district judge held as to Basalo's co-defendant Sanderson that the information was not *Brady* material. *Sanderson*, 110 F.Supp.2d at 1226 n. 4. Neither Sanderson nor Basalo have alleged that the withholding of the Customs Program information violated any other constitutional or statutory provision. While the district court's *Brady* ruling was explicitly made only as to Sanderson,

Sanderson and Basalo were tried together, and the district judge relied on his reasoning in *Sanderson* to grant the four-level departure for Basalo. Second, a *Brady* violation is considered when a *conviction* is challenged. A district court at sentencing proceeds on the basis that the conviction is valid. Using a *Brady* violation as the basis for a downward departure is "impermissible because it simultaneously assumes the validity of a defendant's conviction and conspicuously calls its validity into doubt." *United States v. Bicaksiz*, 194 F.3d 390, 398 (2d Cir.1999). The district judge abused his discretion when he departed downward based on the governmental policy.

■ The district court further abused its discretion when it used an incorrect standard in determining whether the alleged misconduct prejudiced Basalo's position at sentencing. The district court held that the government's failure to disclose information "subverted to an important extent" Basalo's plea bargaining position. *Basalo*, 109 F.Supp.2d at 1226. To the extent *Lopez* survives *Banuelos–Rodriguez*, we held there that the misconduct in plea negotiations prejudiced the defendant's position at sentencing because the district court found that it was "clear that [Lopez] reasonably believed he had no choice but to go to trial" as a direct result of the governmental misconduct. 106 F.3d at 311 (internal quotation omitted). While it is difficult to determine in hindsight what a defendant would or would not have done at the plea negotiation stage had he been furnished with certain information, *see id.*, we have explained in the context of *Brady* violations at the plea bargaining stage that "the test for whether the defendant would have chosen to go to trial is an objective one that centers on the likely persuasiveness of the withheld information." *Sanchez v. United States*, 50 F.3d

1448, 1454 (9th Cir.1995) (internal quotation omitted). Similarly, we hold that the question whether alleged governmental misconduct at the plea bargaining stage prejudiced the defendant at sentencing is an objective one and depends on the likely coercive effect of the misconduct on the defendant's decision to proceed to trial rather than to continue plea negotiations. The district court's holding that the "ramifications of the deprivation of an important plea bargaining chip cannot be determined in an ex post hearing," *Basalo*, 109 F.Supp.2d at 1226, was erroneous: such a determination can be made by the district court.

■ The evidence in the record before us does not support the position that knowledge of the alleged misconduct would have influenced Basalo's decision to proceed to trial. Basalo stated in his debriefing after trial that he did not cooperate with the government before trial because of "concern over the safety of his family members." In addition, only one Customs agent received an award as a direct result of having worked on Basalo's case. While having information about the Customs Program may have been "another arrow in [Basalo's] quiver during plea negotiations," *Sanderson* 110 F.Supp.2d at 1226, Basalo already had in his quiver highly damaging material from the handwriting exemplar session with which to impeach several customs agents.

### B.

In *United States v. Crippen*, 961 F.2d 882, 885 (9th Cir.1992), we held that "[t]he receipt of ineffective assistance of counsel is simply not a 'mitigating or aggravating' circumstance or otherwise a sentencing factor pursuant to § 3553(a)." Basalo argues that this case has been undermined by *Koon*, in which the Supreme Court stated that "for the courts to conclude a factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission." 518 U.S. at 106–07, 116 S.Ct. 2035. However, the two circuits which addressed the issue post-*Koon* have both held that ineffective assistance is never an appropriate basis for departure. *See Bicaksiz*, 194 F.3d at 398 (2d Cir.); *United States v. Martinez*, 136 F.3d 972 (4th Cir. 1998).

■ The Second Circuit's explanation for this result is particularly cogent:

A finding that a convicted defendant has received ineffective assistance of counsel necessarily calls into question the validity of the conviction. By contrast, the imposition of a sentence (with or without a downward departure) and the entry of judgment necessarily assumes the validity of the conviction. A downward departure on ineffective assistance grounds is impermissible because it simultaneously assumes the validity of a defendant's conviction and conspicuously calls its validity into doubt.

*Bicaksiz*, 194 F.3d at 398. We agree with the Second Circuit and hold that ineffective assistance of counsel may not be used as a mitigating factor. Here, the district court simultaneously upheld Basalo's jury conviction while conspicuously calling its validity into doubt.

Basalo argues that we may not rely on *Bicaksiz* because the Second Circuit has already rejected part of that analysis in *United States v. Carmichael*, 216 F.3d 224 (2d Cir.2000). In *Carmichael* the Second Circuit considered whether the district court acted properly in granting a downward sentencing departure for ineffective assistance as a remedy after it had been established in habeas corpus proceedings that the defendant had been denied ineffective assistance during initial plea negotiations. *Id.* at 226. The defendant eventually pled guilty, but to more stringent

terms than were first offered by the government. The Second Circuit vacated the new sentence and reiterated its holding in *Bicaksiz:* "Ineffective assistance is a constitutional violation of a defendant's rights and not a mitigating factor to be considered at sentencing or resentencing. Rather, a finding of ineffective assistance requires a remedy specifically tailored to the constitutional error." *Id.* at 227. As in *Carmichael,* the district court did not make an effort to tailor the remedy to the purported constitutional injury. If the jury conviction of Basalo was indeed tainted by ineffective assistance of counsel, the district court did not remedy that constitutional injury by upholding Basalo's conviction and departing downward at sentencing.

SENTENCE VACATED AND REMANDED